UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

BRANDY M. RIGGER,                    )
                                     )
            Plaintiff,               )
                                     )
                                     )
v.                                   )        No. 3:14-CV-263
                                     )        (REEVES/GUYTON)
CAROLYN W. COLVIN,                   )
Acting Commissioner of Social Security, )
                                     )
            Defendant.               )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation

regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and

Memorandum in Support.  [Doc. 14 & 15].  Also before the Court is Defendant's Motion for

Summary Judgment and Memorandum in Support [Docs. 21 & 22].  Plaintiff Brandy M. Rigger

seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision

of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the

Commissioner").

On December 14, 2010, Plaintiff protectively filed an application for disability insurance

benefits ("DIB") and supplemental security income ("SSI") with an alleged onset date of March

1, 2009.  [Tr. 117-27, 141].  The Social Security Administration denied Plaintiff's application

initially and upon reconsideration.  [Tr. 72-75, 79-82].  Plaintiff timely filed her request for a

hearing, and appeared before Administrative Law Judge George L. Evans, III, on September 17,

2012 in Knoxville, Tennessee.  [Tr. 85, 37].  The ALJ issued an unfavorable decision on January

15, 2013. [Tr. 13-31]. Plaintiff filed her appeal of the decision, which the Appeals Council declined to review on April 23, 2014. [Tr. 1-9].

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on June 18, 2014, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## I.    ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2014.

2. The claimant has not engaged in substantial gainful activity since March 1, 2009, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following combined impairments: anxiety, depression, and personality disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can tolerate only occasional [] workplace changes. The claimant is limited to occasional interaction with co-workers, supervisors, and should not be required to work with the public. Instruction or criticism should be delivered in a non-confrontational manner. The claimant is limited to unskilled, routine work consistent with a Specific Vocational Preparation of 1 or 2. The claimant can persist with customary breaks.

6. The claimant is capable of performing past relevant work as a *Production Assembler*, Dictionary of Occupational Titles No. 706.687-010 at a light exertional level with an SVP/Skill Level of 2. This work does not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2009, through the date of this decision. (20 CFR 404.1520(f) and 416.920(f)).

[Tr. 18-26].

## II.    DISABILITY ELIGIBILITY

This case involves an application for DIB and SSI benefits. An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1). To qualify for SSI benefits, an individual must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

3

42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v.

4

Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

5

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See Id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. EVIDENCE

### A. *Medical Evidence*

On December 14, 2010, Plaintiff protectively filed an application for DIB and SSI with an alleged onset date of March 1, 2009. [Tr. 117-27, 141]. Plaintiff was born on August 13, 1976 and received her GED in 2005. [Tr. 141, 146]. Plaintiff reported past relevant work as a factory line associate, production worker, and restaurant server. [Tr. 146]. Plaintiff alleged that she was terminated from her most recent employment due to absenteeism but explained that she "missed work because of my disability." [Tr. 145-46]. Plaintiff alleged disability due to bipolar disorder, post-traumatic stress disorder ("PTSD"), social anxiety, back pain, and fibromyalgia. [Tr. 145, 46-47].

#### 1. Treating sources

Plaintiff was in an automobile accident and admitted to the University of Alabama Hospital on February 17, 2010. [Tr. 735]. She suffered a right skull fracture, subdural hemorrhage, right orbital wall fracture, right orbital floor fracture, right clavicle fracture, and left

6

first rib fracture. [Id.]. Plaintiff was "ejected from the vehicle. She experienced a loss of consciousness." [Id.]. Plaintiff "convalesced appropriately" and was discharged on February 20, 2010. [Tr. 736].

Plaintiff returned to East Tennessee and sought treatment at the Fort Sanders Emergency Room on February 25, 2010. [Tr. 479]. A piece of glass was removed from Plaintiff's scalp, along with cranial staples. [Tr. 480]. The physicians noted that it was difficult to locate all the cranial staples because of an extensive amount of blood in Plaintiff's hair. [Id.]. She was advised that she would need to check for any additional staples after she washed her hair and have them removed if any were located. [Id.]. She was also given a shoulder immobilizer. [Id.].

Plaintiff followed up on her injuries at University Orthopaedic Surgeons in March 2010. [Tr. 731]. Dr. Baddour confirmed the fracture in Plaintiff's clavicle and encouraged her to continue using an arm sling with "precautions regarding use of the operated extremity with limited lifting for the time being." [Tr. 731-32]. A MRI taken on October 12, 2010 revealed a "4 cm subcutaneous soft tissue fat intensity lesion with well defined pseudocapsule, consistent with lipoma, located within the subcutaneous fat of the posterior superior right shoulder . . . Otherwise negative MRI exam." [Tr. 733]. Dr. Baddour diagnosed lipoma [a benign tumor composed of adipose tissue] in Plaintiff's right shoulder and advised her to resume her normal activities as tolerable. [Tr. 724].

Plaintiff sought mental health treatment at the Helen Ross McNabb Center ("HRMC") on June 17, 2010. Plaintiff reported depression since 2007 after her husband left her and a history of trauma resulting from sexual abuse and being raped at the age of thirteen. [Tr. 262]. Plaintiff stated she experienced additional trauma due to the automobile accident and had difficulty riding in cars as a result. [Id.]. Plaintiff informed the treating nurse of the extent of her injuries from

7

the accident and stated that she had "no lasting damage[.]" [Tr. 269]. Licensed Clinical Social Worker ("LCSW"), Elizabeth Crawford, found that Plaintiff met the criteria for recurrent major depressive episodes and that she was likely experiencing PTSD due to the automobile accident. [Tr. 266]. She encouraged Plaintiff to continue with consistent, individual therapy. [Id.]. During a follow up examination on September 15, 2010, Plaintiff appeared "[a]nxious but cooperative. Speech normal rate and rhythm. Mood depressed, anxious, affect tearful . . . Some better off dead feelings, contracts for safety, no intent." [Tr. 251].

Plaintiff received psychotherapy from Marjorie Lloyd, Licensed Professional Counselor and Mental Health Services Provider ("LPC/MHSP"), from July 2010 through August 2012, consisting of eighty-one, one-hour visits. [Tr. 329-66, 552-608]. LPC Lloyd diagnosed Plaintiff with bipolar disorder, most recent episode depressed and generalized anxiety disorder. [Tr. 330]. On January 12, 2011, LPC Lloyd found that Plaintiff's sadness and depression were somewhat improved, her anxiety was worse, and her anger and fear of riding in automobiles was unchanged. [Tr. 345]. She noted that Plaintiff was filing for disability. [Id.]. On June 20, 2011, LPC Lloyd submitted a Medical Source Statement ("MSS"). [Tr. 423-26]. She found that Plaintiff was moderately limited in her ability to understand and remember simple instructions and make work related decisions. [Tr. 423-25]. She assessed that Plaintiff was markedly limited in her ability to remember work-like procedures, maintain regular attendance, sustain ordinary routine, and respond appropriately to workplace changes. [Id.]. Extreme limitations were found in all areas of social interaction and in Plaintiff's ability to understand and remember detailed instructions, maintain attention for extended periods of 2-hour segments, work in coordination with others, complete a normal workday, and travel to unfamiliar places. [Id.]. LPC Lloyd explained:

8

> Brandy Rigger would have a very hard time maintaining productive work on any job. She has three mental health diagnoses that combined make it very difficult for her to concentrate on work for more than a few minutes at a time. Ms. Rigger has diagnoses of Bipolar I, Depressed Disorder; Generalized Anxiety Disorder[;] and Posttraumatic Stress Disorder. Ms. Rigger takes medications for her disorders that only partially relieve the adverse symptoms. Her Bipolar condition usually involves high levels of depression and mood swings produce irritability and anger. The Generalized Anxiety Disorder causes her to handle poorly any added stress such as a job would produce. Ms. Rigger has blacked out and has gone into a destructive rage, throwing and breaking things from being overly stressed on a job. Later she could not remember anything she did. The anxiety also often includes social anxiety in which being around people causes her to be very nervous.

[Tr. 426]. LPC Lloyd also explained that Plaintiff's PTSD is a result of repeated sexual abuse and the automobile accident. [Id.]. She concluded that "[h]igh anxiety from these sources and from other sources seriously affect the ability to concentrate, increase irritability, are detrimental to memory and cause physical problems such as shaking (amongst others) that can make work difficult." [Id.].

Plaintiff also received psychiatric treatment from Carol Preston, Advanced Practice Nurse ("APN"), from November 2010 through August 2012 consisting of twenty-eight appointments. [Tr. 320-28, 437-49, 614-49]. APN Preston submitted a MSS on June 30, 2011. [Tr. 431-34]. She found marked limitations in Plaintiff's understanding and memory, ability to sustain concentration and persistence, and social interaction. [Tr. 431-33]. She assessed extreme limitations in categories of concentration and persistence, social interaction, and adaptation. [Id.]. APN Preston diagnosed Plaintiff with Bipolar I disorder and social anxiety. [Tr. 434]. She explained that Plaintiff is "chronically mentally ill experiencing recurrences of mania, hypomania and depression multiple times per year. She also has an inability to interact appropriately with others due to social anxiety which inhibits her ability to maintain employment

9

despite psychotropic medications." [Id.]. APN Preston submitted a second MSS on September 10, 2012, confirming Plaintiff's diagnoses and work limitations. [Tr. 616-19]. APN Preston explained that "[d]ue to multiple psychotropic medication failures, Ms. Rigger's mood is unable to be adequately managed. She compulsively rubs her skin due to her obsessive compulsive disorder. She is unable to work full-time due to her inability to tolerate psychotropic medications to control her mood, anxiety and compulsions." [Tr. 619].

Plaintiff sought treatment at Healthy Life Clinic from March 2011 through April 2012. [Tr. 410-21, 501-51]. On March 22, 2011, Plaintiff presented with mid and low back pain with pain levels ranging from seven to ten without medications. [Tr. 413]. Plaintiff also reported feelings of depression and anxiety. [Id.]. Plaintiff stated that she smoked approximately a pack a day and had been a smoker for twenty-five years. [Id.]. Plaintiff was diagnosed with chronic pain, backache unspecified, and major depressive disorder with recurrent severe episodes without psychotic behavior. [Tr. 418]. Images of Plaintiff's lumbar spine were normal in June 2011. [Tr. 511].

Plaintiff received treatment at Ambulatory Care Pain Specialists from October 2011 through September 2012 for back pain. [Tr. 650-723]. On October 27, 2011, Plaintiff reported constant, moderate pain in her upper, mid, and lower back. [Tr. 689]. Nurse Practitioner ("NP") Diane Knights noted that Plaintiff smoked a pack to a pack and a half a day and reviewed an "extensive list of the risks of smoking" with Plaintiff. [Tr. 690]. NP Knights found that Plaintiff was mildly obese and "seems to be in moderate pain." [Id.]. Plaintiff had limited range of motion "with extension, flexion, left lateral bending, right lateral bending, left rotation, and right rotation." [Tr. 691]. A MRI of Plaintiff's cervical spine from November 2011 revealed a "mild posterior disc bulge C3-4, small posterior disc protrusion at C4-5 mild spondylosis at C3-4

10

posterior disc bulge." [Tr. 659]. A MRI of her lumbar spine was normal. [Id.]. X-rays of Plaintiff's thoracic and cervical spine were normal with small calcifications noted at her SI joints and lower pelvis. [Id.]. Plaintiff was diagnosed with fibromyalgia in April of 2012 and was positive for "12/18 tender trigger points throughout her body [consistent with a] diagnosis of fibromyalgia." [Tr. 668]. On August 17, 2012, Plaintiff was diagnosed with low back pain, primarily in the thoracic and lumbar spine, and her prescriptions for Percocet and Savella were refilled. [Tr. 651-52].

### 2. Non-treating sources

Phillip K. Axtell, Ph.D., conducted a psychological evaluation on April 20, 2011. Plaintiff reported daily activities of driving, shopping, cooking, and performing household chores. [Tr. 387]. She stated that she enjoyed reading and completing puzzles. [Id.]. Dr. Axtell diagnosed major depressive disorder recurrent moderate, recurrent severe by history, and PTSD with a Global Assessment of Functioning ("GAF") of 50-55. [Tr. 387]. He concluded that Plaintiff was moderately impaired in her ability to relate socially and adapt to change. [Id.]. He found that Plaintiff "appears able to follow instructions . . . She appears to have had a somewhat consistent work history, but she does have a difficult time with attendance. She appears able to handle finances." [Id.].

Dr. Amin Azimi submitted a psychiatric review on May 3, 2011. [Tr. 392]. He diagnosed Plaintiff with affective disorders and anxiety disorders, specifically bipolar disorder II; major depressive disorder; recurrent, moderate without psychotic features; social phobia; and PTSD. [Tr. 392-97]. He found Plaintiff was mildly limited in her activities of daily living and moderately limited in her ability to maintain social functioning, concentration, persistence, or pace with no episodes of decompensation of extended duration. [Tr. 402]. Dr. Brad Williams

11

affirmed this assessment on August 10, 2011.  [Tr. 450].

Dr. Jeffrey Summers conducted a physical examination on August 17, 2011.  [Tr. 453].
He assessed decreased range of motion in her lumbar spine with normal grip strength and gait.
[Tr. 455].  She had flexion at the waist of 80 degrees and extension of 20 degrees with lateral
flexion of 25 degrees to the left and right.  [Id.].  He assessed chronic back pain and found that:

> Ms. Rigger will have difficulty bending, stooping, kneeling,
> squatting, crouching, crawling, climbing, and lifting greater than
> 20 lbs., as well as standing and walking for greater than 2 hrs.
> continuously or 6 hrs. total in a single workday.  She should
> tolerate all other work related activities in this regard.  In
> particular, she maintains the full and unrestricted use of both upper
> extremities, the ability to work from a seated position, operate
> hand and foot controls, etc. for 8 hrs. in a single workday.

> [Id.].

Dr. Barry Schlossberg considered Dr. Summers's assessment but found that Plaintiff's
chronic back pain was not severe.  [Tr. 463].  In making this determination, he considered her
mild range of motion limitations and lack of neurological problems.  [Id.].

### B.    Other Evidence

The ALJ held an administrative hearing on September 17, 2012 in which Plaintiff and her
mother, Barbara Kirby, testified.  [Tr. 37-67].  Plaintiff testified that she was disabled upon
termination from her employment on the alleged onset date and that her automobile accident
exacerbated her symptoms.  [Tr. 46, 53-54].  Plaintiff explained that her mental impairments
reached a level of disabling severity after her husband left her and she was unable to maintain a
household and care for two minor children on her own.  [Tr. 54].  Plaintiff was excused from the
proceedings and her mother, Ms. Kirby, was brought in to testify.  [Tr. 56-57].  Ms. Kirby
corroborated Plaintiff's statements concerning the onset of her depression after her divorce,

12

testifying that Plaintiff had to move in with her and became "extremely depressed.  I tried to get her to go to the doctor then.  She was just, she was a wreck.  I don't even know how to describe it. You, you can't make someone get up every morning and live if they don't want to." [Tr. 58]. Ms. Kirby described a typical day for Plaintiff as taking her medication and then "I have to ask her if she's eat[en].  I have to ask her to take a bath.  She doesn't just go take a bath.  I mean, I literally have to tell her to go do it.  And then when I do tell her, she may not do it unless I absolutely stand there and insist that you go get in the shower." [Tr. 60].

The ALJ issued an unfavorable decision on January 15, 2013.  [Tr. 13-31].  He found that Plaintiff's back problems, fibromyalgia, and sleep apnea were not severe impairments.  [Tr. 18]. He determined that Plaintiff could perform a full range of work with additional nonexertional limitations and granted Drs. Axtel and Summers great weight.  [Tr. 20, 24-25].  The ALJ assigned little weigh to the opinions of LPC Lloyd and APN Preston, finding their opinions inconsistent with the objective medical evidence.  [Id.].

## V.     POSITIONS OF THE PARTIES

Plaintiff argues that the ALJ erred in classifying her back pain and fibromyalgia as nonsevere.  She further contends that the ALJ's RFC is not supported by substantial evidence as he improperly discounted LPC Lloyd and APN Preston's opinions.

The Commissioner responds that the record supports a finding that Plaintiff's back pain and fibromyalgia are not severe impairments and contends that the ALJ properly weighed the medical evidence in formulating Plaintiff's RFC.

## VI.    ANALYSIS

The Court will address each of the issues presented in turn.

### A.  Severe Impairments

13

The Plaintiff contends that the ALJ committed harmful error by classifying her back pain and fibromyalgia as nonsevere. The Court disagrees.

At step two of the sequential evaluation process, "the ALJ must find that the claimant has a severe impairment or impairments" to be found disabled. Farris v. Sec'y of Health & Human Servs., 773 F.2d 85, 88 (6th Cir. 1985); see 20 C.F.R. § 404.1520(a)(4)(ii). To be severe, an impairment or combination of impairments must "significantly limit[] your physical or mental ability to do basic work activities." 20 C.F.R. §404.1520(c). Step two has been described as "de minimis hurdle in the disability determination process." Higgs v. Brown, 880 F.2d 860, 862 (6th Cir. 1988). An impairment should be classified as nonsevere "only if the impairment is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience.'" Farris, 773 F.2d at 90 (citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir.1984)).

"[O]nce any one impairment is found to be severe, the ALJ must consider both severe and nonsevere impairments in the subsequent steps." McGlothin v. Comm'r of Soc. Sec., 299 F. App'x 516, 522 (6th Cir. Oct. 31, 2008) (citing Anthony v. Astrue, 266 F. App'x 451, 457 (6th Cir. Feb. 22, 2008)); see also 20 C.F.R. § 416.945(a)(2) (explaining that "[i]f you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 416.920(c), 416.921, and 416.923, when we assess your residual functional capacity.").

Therefore, it is "legally irrelevant" that an impairment was determined as non-severe if the ALJ finds other severe impairments. See McGlothin v. Comm'r of Soc. Sec., 299 F. App'x

14

516, 522 (6th Cir. 2008) (reasoning that "because the ALJ found that [Plaintiff] has some severe impairments, he proceeded to complete steps three through five of the analysis. It then became "legally irrelevant" that her other impairments were determined to be not severe.") (quoting Higgs v. Bowen, 880 F.2d 860, 862 (6th Cir. 1988)). The court in Hamilton v. Sec'y of Health & Human Servs., clarified that the rule in Farris is inapplicable where the ALJ continues the five-step disability analysis. 991 F.2d 795 (6th Cir. 1993) (holding that Farris is inapplicable "because the ALJ did not stop his consideration of claimant's [impairment] at Step 2 of the sequential evaluation process. Rather, the ALJ went through Step 5 of the process[.]").

The Court finds that Plaintiff's back pain and fibromyalgia meet the *de minimus* criteria for severe impairments. Higgs, 880 F.2d at 862. The record shows that these physical impairments were "more than a slight abnormality which ha[d] such a minimal effect on the individual that [they] would not be expected to interfere with the individual's ability to work[.]" Farris, 773 F.2d at 90. [See Tr. 455] (Dr. Summers finding that Plaintiff had chronic pain that would result in difficulties performing postural movements and limit her walking and standing to two hours at a time or six hours in a normal workday); [Tr. 690-91] (records from Ambulatory Care Pain Specialists describing Plaintiff's pain as moderate and noting her limited range of motion); [Tr. 659] (A MRI from 2011 showing "mild posterior disc bulge C3-4, small posterior disc protrusion at C4-5 mild spondylosis at C3-4 posterior disc bulge."); [Tr. 688] (diagnosing fibromyalgia and finding Plaintiff had "12/18 tender trigger points throughout her body [consistent with a] diagnosis of fibromyalgia.").

However, the Court finds that any error in this regard was harmless. The ALJ found that Plaintiff's anxiety, depression, and personality disorder constituted severe impairments and he continued with the disability analysis. [See Tr. 18]. Thus, the Plaintiff succeeded at step two.

15

Further, the ALJ considered both her severe and non-severe impairments when determining her RFC. [See Tr. 21-25]. Therefore, it is "legally irrelevant" that the ALJ classified Plaintiff's back pain as nonsevere. See McGlothin, 299 F. App'x 522. Plaintiff's allegation of harmful error in this regard is without merit.

### B. RFC Analysis and Weighing the Medical Evidence

Next, Plaintiff argues that the ALJ's RFC determination was unsupported by substantial evidence because he improperly dismissed the opinions of LPC Lloyd and APN Preston. The Court concurs.

An ALJ is responsible for determining a plaintiff's RFC after reviewing all the relevant evidence of record. Rudd v. Comm'r of Soc. Sec., 531 F. App'x 719, 728 (6th Cir. 2013). An ALJ may consider both medical and non-medical evidence in reaching an RFC determination. Id. A plaintiff's RFC is the most a plaintiff can do despite his or her impairments. 20 C.F.R. § 404.1545(a)(1). In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 240 (6th Cir. 2002). Moreover, "'[a] claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other.'" Griffeth v. Comm'r of Soc. Sec., 217 F. App'x 425, 429 (6th Cir. Feb. 09, 2007) (quoting Yang v. Comm'r of Soc. Sec., No. 00–10446–BC, 2004 WL 1765480, at *5 (E.D. Mich. July 14, 2004)).

A court will not disturb an ALJ's RFC determination so long as the finding is supported by substantial evidence. Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 477 (6th Cir. 2003).

16

However, in determining a claimant's RFC, the ALJ must "make findings of fact" as to her functional and physical limitations. Simpson v. Colvin, 3:11-0481, 2013 WL 4456383, at *17 (M.D. Tenn. Aug. 16, 2013) adopted by, 3:11-CV-00481, 2013 WL 4780082 (M.D. Tenn. Sept. 4, 2013). Further, the ALJ "must 'articulate with specificity reasons for the findings and conclusions that he or she makes' to facilitate meaningful judicial review." Wright v. Astrue, 1:07-CV-226, 2009 WL 890051 (E.D. Tenn. Mar. 26, 2009) (quoting Bailey v. Comm'r of Soc. Sec., 1999 WL 96920, *4, (6th Cir. Feb. 2, 1999)).

Under the Social Security Act and its implementing regulations, an ALJ will consider all the medical opinions in conjunction with the any other relevant evidence received in order to determine if a claimant is disabled. 20 C.F.R. § 404.1527(b). If the opinion of a treating physician is supported by the record, it is entitled to controlling weight. See 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). Where an opinion does not garner controlling weight, the appropriate weight to be given an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2-6).

In order to trigger the treating physician rule, the record must reflect more than just a diagnosis or evidence of a plaintiff's subjective complaints. Pedigo, 2009 WL 6336228, at *6 (requiring an actual opinion of functionality to invoke the treating physician rule "because

disability is determined by reference to the functional limitations imposed by a condition, not the condition itself.") (citing <u>Foster v. Bowen</u>, 853 F.2d 483, 488–89 (6th Cir. 1988).   The agency defines medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).

Pursuant to 20 C.F.R. § 404.1513(a), an acceptable medical source includes licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists.   Non-acceptable medical sources are not entitled to controlling weight.  <u>See</u> 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (explaining that "[m]edical opinions are statements from physicians and psychologists or other *acceptable* medical sources . . .") (emphasis added).  Although nurses are not included as acceptable medical sources under 20 C.F.R. § 404.1513(a), § 404.1513(d)(1)-(4) specifically states that:

> In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include, but are not limited to—
>
> (1) Medical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists) . . .
>
> (4) Other non-medical sources (for example, spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy).

The ALJ must consider all medical opinions in conjunction with any other relevant evidence received in order to determine if a claimant is disabled.  20 C.F.R. § 404.1527(b).  However, an ALJ need not specifically address each medical opinion or piece of evidence in

18

order to adequately consider the record in its entirety.  See Loral Def. Sys.-Akron v. N.L.R.B., 200 F.3d 436, 453 (6th Cir. 1999) ("the fact that the ALJ's opinion failed to discuss all of the testimony and evidence presented to him does not mean that the ALJ 'failed to consider' the evidence.") (quoting NLRB v. Beverly Enterprises-Massachusetts, 174 F.3d 13 (1st Cir. 1999)).

Here, Plaintiff contends that the little weight assigned to LPC Lloyd and APN Preston was in error because they were important sources entitled to great weight.  The Court concurs that the ALJ failed to properly weigh the medical evidence.  Although neither LPC Lloyd nor APN Preston are "acceptable medical sources" who can provide evidence to establish an impairment[,]" 20 C.F.R. § 404.1513(a), they are important sources of information that should be given adequate consideration.  The Sixth Circuit emphasized the importance of these sources:

> [M]any unemployed disability applicants receive treatment at clinics that render care to low income patients by providing mental health treatment through such counselors.  The practical realities of treatment for those seeking disability benefits underscores the importance of addressing the opinion of a mental health counselor as a valid 'other source' providing ongoing care.

Cole v. Astrue, 661 F.3d 931, 939 n.4 (6th Cir. 2011).

The Social Security Administration has further clarified the significance of this evidence and set forth the standard for consideration of opinions from "other sources:"

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file . . .

19

> Although the factors in 20 CFR 404.1527(d) and 416.927(d)
> explicitly apply only to the evaluation of medical opinions from
> "acceptable medical sources," these same factors can be applied to
> opinion evidence from "other sources." These factors represent
> basic principles that apply to the consideration of all opinions from
> medical sources who are not "acceptable medical sources" as well
> as from "other sources[.]"

Soc. Sec. Ruling 06-03P, 2006 WL 2329939, at * 3-5 (S.S.A. Aug. 9, 2006).

Here, the ALJ discussed several of the factors set forth in 20 CFR 404.1527(c) and
416.927(c), specifically noting Plaintiff's treatment relationship with LPC Lloyd and APN
Preston, the consistency of their opinions with the record, and other factors, such as Plaintiff's
daily activities that supported or contradicted their opinions. [See Tr. 24]. However, the Court
finds that the ALJ's consideration of their records and MSS reports did not satisfy agency
procedure and was unsupported by substantial evidence.

The ALJ relied on the portions of the record that discredited Plaintiff's subjective
complaints and failed to adequately consider the evidence supporting her symptoms. For
instance, the ALJ discounted APN Preston's treatment records because "the subjects they
discussed were rather benign such as exploring new hairstyles, her desire to have a new
boyfriend, her breakup with the new boyfriend, and later dating his best friend[.]" [Tr. 24]. Yet,
the ALJ declined to address the notations on these same records of Plaintiff's continued
symptoms of panic, anxiety, social discomfort, phobias, sexual difficulties, thoughts of harming
others, physical aggression, thoughts of suicide and dying, helplessness, worthlessness, isolation,
poor hygiene, and mood instability. [See Tr. 630-43]. Further, the ALJ's interpretation of
Plaintiff's substantive therapy appears unbalanced. The Plaintiff did indeed discuss her
relationships with APN Preston, along with a new hair style. [See id.]. Yet the ALJ did not
acknowledge the fact that Plaintiff explored these topics in regards to her self-esteem, [Tr. 636],

20

and "distrust of men." [Tr. 634]. Plaintiff also discussed her relationship with her mother, setting healthy boundaries with her son, and maintaining relationships with those around her. [See Tr. 630-43]. The ALJ further faulted Plaintiff for her desire to enter into a romantic relationship and employing the use of contraceptives. [See Tr. 25] (finding that Plaintiff's anxiety was improved because she "desired a boyfriend . . . and she was placed on birth control"). The Court is unconvinced that an individual's wish for a romantic relationship and the practice of safe sex has anything to do with one's ability to control anxiety in the work place and finds these facts to be an improper basis for discounting allegations of anxiety and depression.

The ALJ's consideration of Plaintiff's treatment records is similar to a recent case from the Sixth Circuit, in which the Court found that "[t]hese half-sentences and phrases paint a misleading picture of [plaintiff's] mental health. The ALJ's skewed depiction improperly disregards significant portions of the specific medical notes from which these phrases were excerpted. Viewed in their entirety, these notes clearly indicate that [plaintiff] continued to suffer from mental ailments." Winn v. Comm. Soc. Sec., No. 14-3499, 2015 WL 3702032 at *6 (6th Cir. June 15, 2015). The Court finds the same is true in this case.

The ALJ similarly employed Plaintiff's own statements to discount LPC Lloyd and APN Preston's opinions and treatment records. The ALJ noted that Plaintiff informed LPC Lloyd that "she needed disability so that she could live on her own[.]" [Tr. 24]; [see Tr. 598]. The ALJ interpreted this statement to mean that Plaintiff "clearly had the ability to care for her own needs as well as the needs of her child[.]" [Tr. 24]. This assumption seems unwarranted. In the same treatment notes, LPC Lloyd notes that Plaintiff's sadness and depression had worsened, there was no change in her anxiety, and her anger had somewhat improved. [Tr. 598]. LPC Lloyd found that Plaintiff had PTSD from rape and threats to her family, resulting in nightly flashbacks

and nightmares. [Id.]. She also noted that Plaintiff's mother wanted her to move, but that Plaintiff could not live on her own without disability benefits. [Id.]. Again, the Court finds the ALJ's interpretation of this evidence was skewed in favor a finding of "not disabled." The ALJ cannot pick and choose the evidence that weighs in favor of his decision. See Howard, 376 F.3d at 554. To do so violates agency procedure. See 20 C.F.R. § 404.1527(b).

The ALJ also relied heavily on portions of the record depicting Plaintiff's daily activities. The ALJ disagreed with LPC Lloyd's MSS, finding that Plaintiff's "activities of daily living are clearly not marked . . . the claimant reported that she enjoyed such activities as reading and putting together puzzles this requires the ability to concentrate, persist, or pace." [Tr. 24]. The Court notes that the Plaintiff reported fairly extensive activities of daily living in April of 2011. [See Tr. 387] (reporting to Dr. Axtell such activities as driving, shopping, cooking, performing household chores, reading, and completing puzzles). However, a year and a half later, Plaintiff and her mother both testified to severely decreased daily activities. [See Tr. 54] (Plaintiff testifying that on a typical day she lays "on the couch, flipping channels because I can't really concentrate on anything . . . I go weeks without bathing . . . I usually just don't want to think about it."); [Tr. 60-62] (Ms. Kirby testifying that Plaintiff's typical day consists of her taking her medication and eating and bathing only if her mother reminds her. Ms. Kirby explained that "she can't do a whole lot of things she ought to be able to do for herself."). Plaintiff reflected on her past activities, stating that she "used to read a lot, but I, I can't really read anymore because I don't process what I'm reading, for one, and that's too – I can't sit long enough to, to read it." [Tr. 55].

The ALJ further relied on two Function Reports submitted by Plaintiff in January and June of 2011 in assessing her daily activities. [See Tr. 152-59, 184-91]. The ALJ found that

22

"[d]espite the claimant's limitations, she reported she was able to care for her son, cook, clean, and launder clothes. She is able to independently dress, bathe, care of her hair, shave, feed herself, and toilet[.]" [Tr. 21]. Yet this interpretation does not sufficiently depict these reports. [See Tr. 152] (Plaintiff reporting that her concentration is "not good. Dealing with others not good. I can't make myself get in the car sometimes"); [Tr. 153] ("I wake up whenever I have to take my meds[,] sit around tryin to talk myself into getting up and something anything until it's time to go back to bed"); [id.] (reporting that she bathes and cares for her hair "about once a week" and shaves "maybe once a month"); [Tr. 156] (listing hobbies as reading and watching television but that she has to reread and rewatch "before I get it"); [Tr. 186] (stating that her mother has to remind her to take care of her personal hygiene).

The ALJ never addressed these portions of the reports or the testimony regarding Plaintiff's daily activities. He also chose not to consider the evidence corroborating these statements and testimony, such as LPC Lloyd's finding marked limitations in Plaintiff's ability to remember work-like procedures, maintain regular attendance, sustain ordinary routine, and respond appropriately to workplace changes. [Tr. 423-25]. LPC Lloyd also found extreme limitations in all areas of social interaction and in Plaintiff's ability understand and remember detailed instructions. [Id.]; [see also Tr. 431-33] (APN Preston finding marked limitations in Plaintiff's understanding and memory, ability to sustain concentration and persistence, and social interaction); [Tr. 387] (Dr. Axtell assessing Plaintiff with moderate limitations in social relating and ability to adapt to change); [Tr. 392-97] (Dr. Azimi diagnosing bipolar disorder, PTSD, major depressive disorder, and social phobia with moderate limitations in her ability to maintain social functioning, concentration, persistence, or pace).

The Court finds the ALJ's analysis to be unbalanced and inadequate to satisfy agency

23

procedure. As the Sixth Circuit held, "the ALJ's focus on the claimant's ability to do certain activities in discounting the treating source's opinion does not constitute 'good reasons' for doing so when the claimant's testimony and other record evidence contradict the ALJ's finding. Cole, 661 F.3d at 939 (citing Johnson v. Comm'r Soc. Sec., 652 F.3d 646, 652 (6th Cir. 2011)). "Furthermore, 'the functional limitations of mental impairments are to be assessed' based on which activities the claimant can do 'on a *sustained basis.*'" Winn, 2015 WL 3702032, at *8 (citing Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 377 (6th Cir. 2013) (emphasis in the original). The ALJ relied heavily on Plaintiff's daily activities in discounting LPC Lloyd and APN Preston's opinions and treatment records. Yet he assessed her daily activities based only a partial review of the evidence. Even if Plaintiff's daily activities are as the ALJ interpreted, the Court is concerned at the lack evidence supporting a finding that Plaintiff could conduct such activities on a sustained basis. See id.

The Court is further concerned by the ALJ's dismissal of the Ms. Kirby's testimony. The ALJ found her testimony less than credible because "the overall evidence of record is a stark contrast to this testimony. While I find that the claimant does have limitations that require accommodation, her limitations do not rise to the level of totally disabling." [Tr. 22]. Yet the record supports Ms. Kirby's testimony. Both LPC Lloyd and APN Preston presented opinions and treatment records documenting's Plaintiff's ongoing and severe mental impairments. [See Tr. 426] (LPC Lloyd's MSS finding that "Brandy Rigger would have a very hard time maintaining productive work on any job. She has three mental health diagnoses that combined make it very difficult for her to concentrate on work for more than a few minutes at a time."); [Tr. 434] (APN Preston explaining that Plaintiff is "chronically mentally ill experiencing recurrences of mania, hypomania and depression multiple times per year. She also has an

24

inability to interact appropriately with others due to social anxiety which inhibits her ability to maintain employment despite psychotropic medications."). The Court is unclear why Ms. Kirby's testimony was found incredible when Plaintiff's treating professionals corroborated her account.

The logic holds true in reverse. The ALJ discounted LPC Lloyd and APN Preston's opinions because they were inconsistent with the record. Yet there is a wealth of evidence, including Ms. Kirby's testimony given outside the presence of the Plaintiff, which corroborates their opinions and treatment records. [See Tr. 60-62]. The state agency consultants, although finding Plaintiff's limitations were less severe, concurred in LPC Lloyd and APN Preston's diagnoses and found Plaintiff at least moderately impaired due to her mental impairments. [See Tr. 387, 392-97].

The Court concurs with the ALJ that LPC Lloyd and APN Preston are not "accepted medical source[s] in accordance with Social Security Administration standards[.]" [Tr. 24]. Therefore, they are not due the same consideration as a treating physician. Yet the Social Security Administration and Sixth Circuit have made clear that not only must the ALJ adequately weigh all the medical evidence before her, special consideration may be due mental health professionals with a treating relationship. See Cole, 661 F.3d at 939 n.4; Soc. Sec. Ruling 06-03P, 2006 WL 2329939, at * 3-5. The Court finds that such consideration is warranted here and that the ALJ failed in this regard. LPC Lloyd and APN Preston both treated Plaintiff for approximately 2 years, examining Plaintiff on 81 and 28 occasions, respectively. [See Tr. 329-66, 552-608, 323-28, 440-49, 614-49]. These treatment relationships and the resulting opinions of Plaintiff's functionality deserve careful consideration. Yet the ALJ declined to give LPC Lloyd and APN Preston's opinions fair consideration and seemed to pick and choose the portions

25

of the record that supported a finding of not disabled. The Court is further concerned with the ALJ's lack of consideration of Plaintiff's past sexual abuse and the residual effects on her current diagnoses and functionality. There are several diagnoses of PTSD based on past sexual trauma, as well as testimony to that effect. [See Tr. 53-54, 262, 384, 426]. The Court finds that this evidence would be helpful and necessary in order to weigh the evidence as whole in determining Plaintiff's RFC.

Based on this error, the Court finds that the ALJ's RFC is unsupported by substantial evidence. The record is replete with treatment records, MSS reports, non-treating physician opinions, function reports, and testimony reflecting serious mental illness which is inadequately accounted for in the ALJ's RFC analysis. The Court is aware that an ALJ need not specifically address each medical opinion or piece of evidence in order to adequately consider the record in its entirety. See Loral Def. Sys.-Akron, 200 F.3d at 453. However, the ALJ has a duty to weigh the evidence as a whole and craft an opinion supported by substantial evidence. See 20 C.F.R. § 404.1527(b); Warner, 375 F.3d at 390; 42 U.S.C. § 405(g). Here, the ALJ failed to address large portions of the record and the resulting RFC lacks support based on a consideration of the evidence as a whole. It matters not whether this Court agrees with the ALJ or would have found otherwise. Crisp, 790 F.2d 450, 453 n.4. This Court is limited to only two inquiries: whether the ALJ's decision adheres to agency procedure and is supported by substantial evidence. Warner, 375 F.3d at 390; 42 U.S.C. § 405(g). The Court finds that the ALJ has satisfied neither duty in crafting his RFC analysis. Therefore, the Court concurs with Plaintiff that the ALJ failed to properly weigh the medical evidence and finds such error harmful and worthy of remand.

26

## VII. CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[1] that Plaintiff's Motion for Summary Judgment, **[Doc. 14],** be **GRANTED in part,** and that the Commissioner's Motion for Summary Judgment, **[Doc. 21],** be **DENIED in part.**

Accordingly, the Court **RECOMMENDS** that this case be remanded and:

- The ALJ shall reassess Plaintiff's RFC based on a consideration of the record as a whole, specifically considering LPC Lloyd and APN Preston's opinions and weighing their records in accordance with 20 CFR §§ 404.1527(c) and 416.927(c).

Respectfully submitted,

Bruce Guyton

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).